**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| U.S. WELL SERVICES, INC. | § | |
| | § | |
| | § | |
| v. | § | Civil Action No. 3:19-cv-225 |
| | § | |
| | § | **JURY TRIAL DEMANDED** |
| TOPS WELL SERVICES, LLC; and | § | |
| HONGHUA AMERICA, LLC | § | |
| | § | |
| | § | |

---

**PLAINTIFF'S ORIGINAL COMPLAINT**

---

Plaintiff U.S. Well Services, Inc. hereby files this Original Complaint against Defendants TOPS Well Services, LLC and Honghua America, LLC.

## NATURE OF THE CASE

1.      Plaintiff brings claims under the patent laws of the United States for the willful infringement of U.S. Patent Nos. 8,789,601, 9,410,410, 9,611,728, 9,650,871, 9,650,879, 9,970,278, and 10,337,308.

## THE PARTIES

2.      Plaintiff U.S. Well Services, Inc. ("USWS" or "Plaintiff") is a Texas limited liability company with a principal place of business at 1360 Post Oak Blvd., Suite 1800, Houston, Texas 77056.

3.      Defendant TOPS Well Services, LLC ("TOPS") is a limited liability company organized and existing under the laws of the State of North Dakota, with a regular and established principal place of business at 3077 Outlet Center Dr., Sealy, Texas 77474.

4.      Defendant Honghua America, LLC ("Honghua") is a Texas limited liability company having its principal place of business at 8300 McHard Rd., Houston, Texas 77053.

1

Honghua may be served through its registered agent, Capitol Corporate Services, at 206 E. 9th Street, Suite 1300, Austin TX 78701.

5.      Unless it is necessary to distinguish a particular entity, TOPS and the Honghua entities will be referred to collectively as "Defendants."

## THE PATENTS-IN-SUIT

6.      On July 29, 2014, the United States Patent and Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 8,789,601 (the "'601 Patent"), entitled "System for Pumping Hydraulic Fracturing Fluid using Electric Pumps."  USWS holds all rights, title, and interest in and to the '601 Patent.

7.      On August 9, 2016, the USPTO duly and legally issued U.S. Patent No. 9,410,410 (the "'410 Patent"), entitled "System for Pumping Hydraulic Fracturing Fluid using Electric Pumps."  USWS holds all rights, title, and interest in and to the '410 Patent.

8.      On May 16, 2017, the USPTO duly and legally issued U.S. Patent No. 9,611,728 (the "'728 Patent"), entitled "Cold Weather Package for Oil Field Hydraulics."  USWS holds all rights, title, and interest in and to the '871 Patent.

9.      On May 16, 2017, the USPTO duly and legally issued U.S. Patent No. 9,650,871 (the "'871 Patent"), entitled "Safety Indicator Lights for Hydraulic Fracturing Pumps."  USWS holds all rights, title, and interest in and to the '871 Patent.

10.     On May 16, 2017, the USPTO duly and legally issued U.S. Patent No. 9,650,879 (the "'879 Patent"), entitled "Torsional Coupling for Electric Hydraulic Fracturing Fluid Pumps."  USWS holds all rights, title, and interest in and to the '879 Patent.

11.     On May 15, 2018, the USPTO duly and legally issued U.S. Patent No. 9,970,278 (the "'278 Patent"), entitled "System for Centralized Monitoring and Control of Electric Powered Hydraulic Fracturing Fleet."  USWS holds all rights, title, and interest in and to the '278 Patent.

12.    On July 2, 2019, the USPTO duly and legally issued U.S. Patent No. 10,337,308 (the "'308 Patent"), entitled "System for Pumping Hydraulic Fracturing Fluid using Electric Pumps." USWS holds all rights, title, and interest in and to the '308 Patent.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 101 *et seq.*

14.    The Court has personal jurisdiction over TOPS because it has, either directly or through intermediaries, conducted business in this District by importing, making, using, offering for sale, selling, and advertising (including the provision of an interactive web page) products and/or services in both Texas and in this District.

15.    TOPS has purposefully placed its products and services into the stream of commerce with the expectation that they will be purchased and used by customers located in Texas and in this District. On information and belief, TOPS customers in Texas and in this District have purchased and used and continue to purchase and use TOPS's products and services.

16.    TOPS has made, used, sold, offered for sale, and/or imported products and services, including but not limited to hydraulic fracturing services with all-electric capabilities, that are alleged herein to infringe the patents set forth herein. TOPS has purposefully placed such products and services into the stream of commerce by offering for sale, selling, and/or using these products and services in Texas and in this District.

17.    At the time of filing for this Complaint, TOPS's products and services are available for purchase by consumers in Texas including within this District.

18.    Venue as to TOPS is proper in this District under 28 U.S.C. § 1400(b) at least because TOPS has committed acts of infringement in this District and has a regular and established place of business in this District.

19.     The Court has personal jurisdiction over Honghua because it has, either directly or through intermediaries, conducted business in this State by importing, making, using, offering for sale, selling, and advertising (including the provision of an interactive web page) its products and services in Texas and in this District.  For example, Honghua maintains its corporate headquarters at 8300 McHard Rd., Houston, Texas 77053 and has entered transactions with TOPS in Houston, Texas.

20.     Honghua has purposefully placed its products and services into the stream of commerce with the expectation that they will be purchased and used by customers located in Texas and this District.  On information and belief, Honghua's customers in Texas and in this District have purchased and used and continue to purchase and use Honghua products and services.

21.     The Court also has personal jurisdiction over Honghua because it is deemed to be a resident of Texas by virtue of being organized under Texas law and/or maintaining its principal place of business in Texas and in this District.

22.     Honghua has imported, made, sold, and/or offered for sale products and services, including but not limited to electric hydraulic fracturing pumps, that are alleged herein to infringe the patents and/or induce infringement of the patents set forth herein.  Honghua has purposefully placed such products and services into the stream of commerce by offering for sale, selling, and/or using these products and services in Texas and in this District.

23.     At the time of filing for this Complaint, Honghua products and services are available for purchase by consumers in Texas including within this District.

24.     Venue as to Honghua is proper in this District under 28 U.S.C. § 1400(b) at least because Honghua resides in this District.  Venue is also proper in this District under 28 U.S.C. § 1400(b) because Honghua has committed acts of infringement in this District and has a regular and established place of business in this District.

## FACTUAL BACKGROUND

25.     USWS provides services at well sites to exploration and production companies, including hydraulic fracturing ("fracking") services.

26.     In July 2014, USWS successfully deployed Clean Fleet, the first all-electric well stimulation system in the fracking industry.  USWS earned public acclaim for this breakthrough, including a New Technology Development Award at the Annual Oil & Gas Awards in March 2015.  Clean Fleet has saved USWS customers millions of dollars in operational costs and led to long-term contracts with some of the largest exploration and production companies in the world.

27.     USWS expended significant investments to develop and commercialize the Clean Fleet electric fracking technology, which had been unproven technology.  USWS's investments included research and development, testing, and implementation at appropriate quality and scale.

28.     USWS has applied for and obtained several patents including the Patents-in-Suit.

29.     The USWS Clean Fleet systems practice the claims of the Patents-in-Suit and comply with all applicable marking requirements.

30.     On information and belief, TOPS provides services at well sites, including fracking services.  TOPS advertises and promotes its products and services on its website,[1] such as electric fracking capabilities using a 6000 horsepower (HP) pump.[2]

31.     On information and belief, and according to TOPS' website, TOPS sells services performed at well sites in at least Texas, Colorado, Denver, Wyoming, New Mexico, Utah, Montana, and North Dakota.

32.     As such, TOPS competes with USWS in providing fracking services and electric fracking services, within at least the United States.

---

[1] http://www.topswellservices.com/hydraulic-fracturing-technology.
[2] http://www.topswellservices.com/the-mississippian-lime-americas-next-big-resource-play.

33.    On information and belief, Honghua supplies oil and gas equipment, including the infringing instrumentalities at issue, to TOPS.

34.    Honghua sells its products in the United States (including to TOPS), such as a 6000HP electric fracturing pump ("HH-6000HP Pump") with a VFD system ("HH-VFD").[3]



35.    On information and belief, and according to the website for Honghua's parent company, the China Aerospace Science & Industry Corporation ("CASIC") is the majority shareholder of Honghua's parent company.[4]  CASIC is a state-owned enterprise under the direct supervision of the Chinese government.

36.    On information and belief, Luke Hooten has been employed by TOPS since 2013. Hooten has posted information on the Internet about fracking equipment and services that TOPS makes, uses, sells, offers for sale, and/or otherwise commercializes.

---

[3] http://www.hh-gltd.com/product/infos/125.
[4] http://en.hh-gltd.com/.



37.    On information and belief, beginning at least in 2017, TOPS has imported, sold, offered for sale, and/or used products acquired from Honghua, including at least the HH-6000HP Pump, that infringe the Patents-in-Suit.



38.    Additionally, on information and belief, beginning in at least 2018, TOPS made, used, offered for sale and/or sold products and services that infringe the Patents-in-Suit by configuring equipment at well sites, including at least the HH-6000HP Pump with one or more variable frequency drive ("VFD") systems from Honghua to practice the Patents-in-Suit.



39.    On information and belief, TOPS uses one or more variable frequency drive ("VFD") systems acquired from Honghua to practice the Patents-in-Suit.



40.    A sales presentation for the Honghua "Ultra-high Horsepower Electric Fracturing System," on information and belief, makes several references to a TOPS well site as an exemplary use case for the infringing instrumentalities including the HH-6000HP Pump and HH-VFD.



41.     On information and belief, several of the photographs in the Honghua Sales Presentation are captured from the same TOPS well site found in the images posted by Hooten.







42.     On information and belief, Defendants were aware of the Patents-in-Suit prior to the filing of this Complaint, at least including through public information about these patents and public information about USWS's Clean Fleet system.

43.     In addition or in the alternative, on information and belief, Defendants were aware of the Patents-in-Suit beginning at least in December 2018 due, in whole or in part, to communications between Honghua and USWS regarding USWS's patented technology at issue.

44.     Defendants are not licensed to the patents asserted in this Complaint, yet Defendants knowingly, actively, and lucratively practice and/or induce others to practice the patents literally and/or under the doctrine of equivalents.

## FIRST CAUSE OF ACTION

### Infringement of the '601 Patent by TOPS

45.    USWS incorporates herein each of the allegations above.

46.    TOPS' products and/or services that infringe the '601 Patent include, but are not limited to, hydraulic fracturing services and equipment with all-electric capabilities, which TOPS apparently refers to as "E-Fleets" on its website.

47.    TOPS directly infringes—literally and/or under the doctrine of equivalents—at least representative Claim 8 of the '601 Patent by making, using, selling, importing, and/or offering for sale at least the E-Fleets systems and components thereof.

48.    Claim 8 of the '601 Patent recites:

> 8. A system for fracturing a rock formation in an oil or gas well by pumping hydraulic fracturing fluid into the well, the system comprising:
>
> a pump for pumping the hydraulic fracturing fluid into the well, and then from the well into the formation, the pump mounted on a trailer or truck and capable of pumping the hydraulic fracturing fluid at high pressure to crack the formation;
>
> an electric motor having a high-strength steel or steel alloy drive shaft attached to the pump and configured to drive the pump;
>
> a variable frequency drive connected to the electric motor to control the speed of the motor, the variable frequency drive frequently performing electric motor diagnostics to prevent damage to the electric motor if it becomes grounded or shorted; and
>
> a generator connected to the electric motor that provides electric power to the electric motor.

49.    TOPS makes, uses, import, sells and/or offers for sale a system for fracturing a rock formation in an oil or gas well by pumping hydraulic fracturing fluid into the well including at least the TOPS E-Fleet.



50.    The TOPS system (including at least the E-Fleet) comprises the HH-6000HP Pump, which is a pump for pumping the hydraulic fracturing fluid into the well, and then from the well into the formation.





51.    The HH-6000HP Pump of the TOPS system (including at least the E-Fleet) is mounted on a trailer or truck and capable of pumping the hydraulic fracturing fluid at high pressure to crack the formation.



52.    The TOPS system (including at least the E-Fleet) comprises an electric motor having a high-strength steel or steel alloy drive shaft attached to the pump and configured to drive the pump.









**YouTube video titled "Honghua 6000hp electrical Frac Pump" uploaded by Daniel Tang of Honghua**[5]

53.     As shown above, the HH-6000HP Pump in the TOPS system (including at least the E-Fleet) has an electric motor and a high-strength steel or steel alloy shaft, which rotates throughout the video and attaches to the pump and is configured to drive the pump.

54.     The TOPS system (including at least the E-Fleet) comprises a variable frequency drive connected to the electric motor to control the speed of the motor.

---

[5] https://www.youtube.com/watch?v=B6U2iXCM8gc.





55.    The TOPS system (including at least the E-Fleet) also comprises the variable frequency drive frequently performing electric motor diagnostics to prevent damage to the electric motor if it becomes grounded or shorted.



56.    The TOPS system (including at least the E-Fleet) comprises a generator connected to the electric motor that provides electric power to the electric motor.



57.     In addition to its direct infringement, TOPS knowingly induces and/or contributes to the infringement of the '601 Patent, including at least Claim 8, by customers and end-users of the TOPS system (including at least the E-Fleet), with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to making, selling, promoting, or offering for sale products and services relating to the TOPS system (including at least the E-Fleet) and components thereof, in the United States.

58.     As alleged above, TOPS had actual notice of the '601 Patent and of its infringement of that patent.  Because TOPS had knowledge of '601 Patent rights and proceeded to directly and indirectly infringe, TOPS' infringement is willful.  Willful infringement of the '601 Patent entitles Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

59.     TOPS's continued infringement of the '601 Patent has damaged and will continue to damage USWS in the amount to be proven at trial.

60.     Unless and until enjoined by this Court, TOPS will continue to directly and indirectly infringe the '601 Patent.  TOPS's infringing acts are causing and will continue to cause USWS irreparable harm, for which there is no adequate remedy at law.  Under 35 U.S.C. § 283, USWS is entitled to a permanent injunction against further infringement.

## SECOND CAUSE OF ACTION

### Infringement of the '410 Patent by TOPS

61.     USWS incorporates herein each of the allegations above.

62.     TOPS's products and/or services that infringe the '410 Patent include, but are not limited to, hydraulic fracturing services with all-electric capabilities, which TOPS apparently refers to as "E-Fleets" on its website.

63.     TOPS directly infringes—literally and/or under the doctrine of equivalents—at least representative Claim 1 of the '410 Patent by making, using, selling, importing, and/or offering for sale the TOPS system (including at least the E-Fleet) and components thereof.

64.     Claim 1 of the '410 Patent recites:

> 1.  A system for hydraulically fracturing an underground formation in an oil or gas well to extract oil or gas from the formation, the oil or gas well having a wellbore that permits passage of fluid from the wellbore into the formation, the system comprising:
>
> > a plurality of electric pumps fluidly connected to the well and powered by at least one electric motor, and configured to pump fluid into the wellbore at high pressure so that the fluid passes from the wellbore into the formation, and fractures the formation; and
> >
> > a variable frequency drive connected to the electric motor to control the speed of the motor, wherein the variable frequency drive frequently performs electric motor diagnostics to prevent damage to the at least one electric motor.

19

65.     The TOPS system (including at least the E-Fleet) is a system for hydraulically fracturing an underground formation in an oil or gas well to extract oil or gas from the formation, the oil or gas well having a wellbore that permits passage of fluid from the wellbore into the formation.

66.     The TOPS system (including at least the E-Fleet) comprises a plurality of HH-6000HP Pumps, which are electric pumps fluidly connected to the well.

67.     The Honghua HH-6000HP Pumps in the TOPS system (including at least the E-Fleet) are powered by at least one electric motor.

68.     The Honghua HH-6000HP Pumps in the TOPS system (including at least the E-Fleet) are configured to pump fluid into the wellbore at high pressure so that the fluid passes from the wellbore into the formation, and fractures the formation.

69.     The TOPS system (including at least the E-Fleet) comprises a variable frequency drive connected to the electric motor to control the speed of the motor.

70.     The variable frequency drive in the TOPS system (including at least the E-Fleet) frequently performs electric motor diagnostics to prevent damage to the at least one electric motor.

71.     In addition to its direct infringement, TOPS knowingly induces and/or contributes to the infringement of the 410 Patent, including at least Claim 1, by customers and end-users of the TOPS system (including at least the E-Fleet), with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to making, selling, promoting, or offering for sale products and services relating to the TOPS system (including at least the E-Fleet) and components thereof, in the United States.

72.     As alleged above, TOPS had actual notice of the '410 Patent and of its infringement of that patent.  Because TOPS had knowledge of '410 Patent rights and proceeded to directly and indirectly infringe, TOPS' infringement is willful.  Willful infringement of the '410 Patent entitles

Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

73.    TOPS' continued infringement of the '410 Patent has damaged and will continue to damage USWS in the amount to be proven at trial.

74.    Unless and until enjoined by this Court, TOPS will continue to directly and indirectly infringe the '410 Patent.  TOPS' infringing acts are causing and will continue to cause USWS irreparable harm, for which there is no adequate remedy at law.  Under 35 U.S.C. § 283, USWS is entitled to a permanent injunction against further infringement.

### THIRD CAUSE OF ACTION

### Infringement of the '728 Patent by TOPS

75.    USWS incorporates herein each of the allegations above.

76.    TOPS's products and/or services that infringe the '728 Patent include, but are not limited to, hydraulic fracturing services with all-electric capabilities, which TOPS apparently refers to as "E-Fleets" on its website.

77.    TOPS directly infringes—literally and/or under the doctrine of equivalents—at least representative Claim 1 of the '728 Patent by making, using, selling, importing, and/or offering for sale the TOPS system (including at least the E-Fleet) and components thereof.

78.    Claim 1 of the '728 Patent recites:

> 1.  A system for hydraulically fracturing an underground formation in an oil or gas well, the system comprising:
>
> a plurality of electric pumps fluidly connected to the well and powered by at least one electric motor, and configured to pump fluid into the wellbore at high pressure so that the fluid passes from the wellbore into the formation, and fractures the formation;
>
> a variable frequency drive connected to the electric motor to control the speed of the motor, wherein the variable frequency

drive frequently performs electric motor diagnostics to prevent damage to the at least one electric motor; and

a working fluid system comprising working fluid, and a heater that is in thermal contact with the working fluid;

wherein the heater comprises a tank having working fluid and a heating element in thermal contact with the working fluid.

79.    The TOPS system (including at least the E-Fleet) is a system for hydraulically fracturing an underground formation in an oil or gas well.

80.    The TOPS system (including at least the E-Fleet) comprises a plurality of HH-6000HP Pumps, which are pumps fluidly connected to the well.

81.    The HH-6000HP Pumps in TOPS system (including at least the E-Fleet) are powered by at least one electric motor.

82.    The HH-6000HP Pumps in TOPS system (including at least the E-Fleet) are configured to pump fluid into the wellbore at high pressure so that the fluid passes from the wellbore into the formation, and fractures the formation.

83.    The TOPS system (including at least the E-Fleet) comprises a variable frequency drive connected to the electric motor to control the speed of the motor.

84.    The variable frequency drive in the TOPS system (including at least the E-Fleet) frequently performs electric motor diagnostics to prevent damage to the at least one electric motor.

85.    The TOPS system (including at least the E-Fleet) comprises a working fluid system comprising working fluid.

86.    On information and belief, the TOPS system (including at least the E-Fleet) comprises a heater that is in thermal contact with the working fluid.  TOPS performs services in regions with low temperatures during the winter, such as the Niobrara-DJ Basin.  Accordingly, on information and belief, TOPS uses a heater in thermal contact with the working fluid to ensure flow for the working fluid.

87.    On information and belief, the heater in the TOPS system (including at least the E-Fleet) comprises a tank having working fluid and a heating element in thermal contact with the working fluid.



88.    In addition to its direct infringement, TOPS knowingly induces and/or contributes to the infringement of the '728 Patent, including at least Claim 1, by customers and end-users of the TOPS system (including at least the E-Fleet), with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to making, selling, promoting, or offering for sale products and services relating to the TOPS system (including at least the E-Fleet), in the United States.

89.    As alleged above, TOPS had actual notice of the '728 Patent and of its infringement of that patent.  Because TOPS had knowledge of '728 Patent rights and proceeded to directly and indirectly infringe, TOPS' infringement is willful.  Willful infringement of the '728 Patent entitles Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

90.    TOPS's continued infringement of the '728 Patent has damaged and will continue to damage USWS in the amount to be proven at trial.

91.    Unless and until enjoined by this Court, TOPS will continue to directly and indirectly infringe the '728 Patent.  TOPS's infringing acts are causing and will continue to cause USWS irreparable harm, for which there is no adequate remedy at law.  Under 35 U.S.C. § 283, USWS is entitled to a permanent injunction against further infringement.

### FOURTH CAUSE OF ACTION

**Infringement of the '871 Patent by TOPS**

92.    USWS incorporates herein each of the allegations above.

93.    TOPS's products and/or services that infringe the '871 Patent include, but are not limited to, hydraulic fracturing services with all-electric capabilities, which TOPS apparently refers to as "E-Fleets" on its website.

94.    TOPS directly infringes—literally and/or under the doctrine of equivalents—at least representative Claim 1 of the '871 Patent by making, using, selling, importing, and/or offering for sale TOPS system (including at least the E-Fleet) and components thereof.

95.    Claim 1 of the '871 Patent recites:

1.  A hydraulic fracturing system for fracturing a subterranean formation comprising:

a plurality of electric pumps fluidly connected to the formation, and powered by at least one electric motor, and configured to pump fluid at high pressure into a wellbore that intersects the formation, so that the fluid passes from the wellbore into the formation, and fractures the formation;

a variable frequency drive connected to the electric motor to control the speed of the motor, wherein the variable frequency drive frequently performs electric motor diagnostics to prevent damage to the at least one electric motor; and

a signal assembly that selectively emits a visual signal that is indicative of an operational state of the hydraulic fracturing system.

96.    The TOPS system (including at least the E-Fleet) is a hydraulic fracturing system for fracturing a subterranean formation.

97.    The TOPS system (including at least the E-Fleet) comprises a plurality of HH-6000HP Pumps, which are electric pumps fluidly connected to the formation.

98.    The HH-6000HP Pumps in the TOPS system (including at least the E-Fleet) are powered by at least one electric motor.

99.    The HH-6000HP Pumps in the TOPS system (including at least the E-Fleet) are configured to pump fluid at high pressure into a wellbore that intersects the formation, so that the fluid passes from the wellbore into the formation, and fractures the formation.

100.    The TOPS system (including at least the E-Fleet) comprises a variable frequency drive connected to the electric motor to control the speed of the motor, wherein the variable frequency drive frequently performs electric motor diagnostics to prevent damage to the at least one electric motor.

101.    The HH-6000HP Pumps in the TOPS system (including at least the E-Fleet) comprise a signal assembly that selectively emits a visual signal that is indicative of an operational state of the hydraulic fracturing system.



102.    In addition to its direct infringement, TOPS knowingly induces and/or contributes to the infringement of the '871 Patent, including at least Claim 1, by customers and end-users of the TOPS system (including at least the E-Fleet), with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to making, selling, promoting, or offering for sale products and services relating to the TOPS system (including at least the E-Fleet) and components thereof, in the United States.

103.    As alleged above, TOPS had actual notice of the '871 Patent and of its infringement of that patent.  Because TOPS had knowledge of '871 Patent rights and proceeded to directly and indirectly infringe, TOPS' infringement is willful.  Willful infringement of the '871 Patent entitles Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

104.    TOPS' continued infringement of the '871 Patent has damaged and will continue to damage USWS in the amount to be proven at trial.

105.    Unless and until enjoined by this Court, TOPS will continue to directly and indirectly infringe the '871 Patent.  TOPS' infringing acts are causing and will continue to cause USWS irreparable harm, for which there is no adequate remedy at law.  Under 35 U.S.C. § 283, USWS is entitled to a permanent injunction against further infringement.

## FIFTH CAUSE OF ACTION

### Infringement of the '879 Patent by TOPS

106.    USWS incorporates herein each of the allegations above.

107.    TOPS's products and/or services that infringe the '879 Patent include, but are not limited to, hydraulic fracturing services with all-electric capabilities, which TOPS apparently refers to as "E-Fleets" on its website.

108.    TOPS directly infringes—literally and/or under the doctrine of equivalents—at least representative Claim 1 of the '879 Patent by making, using, selling, importing, and/or offering for sale TOPS system (including at least the E-Fleet) and components thereof.

109.    Claim 1 of the '879 Patent recites:

> 1.  A system for hydraulically fracturing an underground formation in an oil or gas well, the system comprising:
>
> a pump for pumping hydraulic fracturing fluid into the wellbore at high pressure so that the fluid passes from the wellbore into the formation and fractures the formation, the pump having a pump shaft that turns to activate the pump;
>
> an electric motor with a motor shaft to drive the pump, the electric motor including a variable frequency drive and an alternating current console to control the speed of the electric motor to protect against overheating; and
> a torsional coupling connecting the motor shaft to the pump shaft, the torsional coupling comprising:
>
> a motor component fixedly attached to the motor shaft of the electric motor; and
>
> a pump component fixedly attached to the pump shaft of the pump;
>
> the motor component engaged with the pump component so that when the motor shaft and motor component rotate, the motor component contacts the pump component so that the pump component and the pump shaft rotate, thereby driving the pump.

110.    The TOPS system (including at least the E-Fleet) is a system for hydraulically fracturing an underground formation in an oil or gas well.

111.    The TOPS system (including at least the E-Fleet) comprises a HH-6000HP Pump, which is a pump for pumping hydraulic fracturing fluid into the wellbore at high pressure so that the fluid passes from the wellbore into the formation and fractures the formation.

112.    The HH-6000HP Pump is a pump having a pump shaft that turns to activate the pump.

113.    The TOPS system (including at least the E-Fleet) comprises an electric motor with a motor shaft to drive the pump.

114.    The electric motor in the TOPS system (including at least the E-Fleet) includes a variable frequency drive and an alternating current console to control the speed of the electric motor to protect against overheating.



115.    The HH-6000HP Pump in the TOPS system (including at least the E-Fleet) comprises a torsional coupling connecting the motor shaft to the pump shaft.



**YouTube video titled "Honghua 6000hp electrical Frac Pump" uploaded by Daniel Tang of Honghua**[6]

116.    As shown above, the HH-6000HP Pump is driven by a direct electric motor, configured such that a torsional coupling connects the motor shaft to the pump shaft, which rotates throughout the video, thereby driving the pump.

---

[6] https://www.youtube.com/watch?v=B6U2iXCM8gc.

117.    The torsional coupling in the TOPS system (including at least the E-Fleet) comprises a motor component fixedly attached to the motor shaft of the electric motor.

118.    The torsional coupling in the TOPS system (including at least the E-Fleet) comprises a pump component fixedly attached to the pump shaft of the pump.

119.    The motor component is engaged with the pump component in the TOPS system (including at least the E-Fleet), so that when the motor shaft and motor component rotate, the motor component contacts the pump component so that the pump component and the pump shaft rotate, thereby driving the pump.

120.    In addition to its direct infringement, TOPS knowingly induces and/or contributes to the infringement of the '879 Patent, including at least Claim 1, by customers and end-users of the TOPS system (including at least the E-Fleet), with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to making, selling, promoting, or offering for sale products and services relating to the TOPS system (including at least the E-Fleet) and components thereof, in the United States.

121.    As alleged above, TOPS had actual notice of the '879 Patent and of its infringement of that patent.  Because TOPS had knowledge of '879 Patent rights and proceeded to directly and indirectly infringe, TOPS' infringement is willful.  Willful infringement of the '879 Patent entitles Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

122.    TOPS' continued infringement of the '879 Patent has damaged and will continue to damage USWS in the amount to be proven at trial.

123.    Unless and until enjoined by this Court, TOPS will continue to directly and indirectly infringe the '879 Patent.  TOPS' infringing acts are causing and will continue to cause

USWS irreparable harm, for which there is no adequate remedy at law.  Under 35 U.S.C. § 283, USWS is entitled to a permanent injunction against further infringement.

## SIXTH CAUSE OF ACTION

### Infringement of the '278 Patent by TOPS

124.    USWS incorporates herein each of the allegations above.

125.    TOPS's products and/or services that infringe the '278 Patent include, but are not limited to, hydraulic fracturing services with all-electric capabilities, which TOPS apparently refers to as "E-Fleets" on its website.

126.    TOPS directly infringes—literally and/or under the doctrine of equivalents—at least representative Claim 1 of the '278 Patent by making, using, selling, importing, and/or offering for sale TOPS system (including at least the E-Fleet) and components thereof.

127.    Claim 1 of the '278 Patent recites:

> 1.    A system for hydraulically fracturing an underground formation in an oil or gas well to extract oil or gas from the formation, the oil or gas well having a wellbore that permits passage of fluid from the wellbore into the formation, the system comprising:
>
>> a plurality of electric pumps fluidly connected to the well, and configured to pump fluid into the wellbore at high pressure so that the fluid passes from the wellbore into the formation, and fractures the formation;
>>
>> a plurality of generators electrically connected to the plurality of electric pumps to provide electrical power to the electric pumps; and
>>
>> a centralized control unit coupled to the plurality of electric pumps and the plurality of generators, wherein the centralized control unit is configured to:
>>
>> monitor at least one of pressure and temperature of the plurality of electric pumps and the plurality of generators.

128.    The TOPS system (including at least the E-Fleet) is a system for hydraulically fracturing an underground formation in an oil or gas well to extract oil or gas from the formation,

the oil or gas well having a wellbore that permits passage of fluid from the wellbore into the formation.

129. The TOPS system (including at least the E-Fleet) comprises a plurality of HH-6000HP Pumps, which are electric pumps fluidly connected to the well.

130. The HH-6000HP Pumps in the TOPS system (including at least the E-Fleet) are configured to pump fluid into the wellbore at high pressure so that the fluid passes from the wellbore into the formation, and fractures the formation.

131. The TOPS system (including at least the E-Fleet) comprises a plurality of 3MW generators electrically connected to the plurality of electric pumps to provide electrical power to the electric pumps.



132. The TOPS system (including at least the E-Fleet) comprises a centralized control unit coupled to the plurality of electric pumps and the plurality of generators.



133.    The centralized control unit in the TOPS system (including at least the E-Fleet) is configured to monitor at least one of pressure and temperature of the plurality of electric pumps and the plurality of generators.



134.    In addition to its direct infringement, TOPS knowingly induces and/or contributes to the infringement of the '278 Patent, including at least Claim 1, by customers and end-users of the TOPS system (including at least the E-Fleet), with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to making, selling, promoting, or offering for sale products and services relating to the TOPS system (including at least the E-Fleet) and components thereof, in the United States.

135.    As alleged above, TOPS had actual notice of the '278 Patent and of its infringement of that patent.  Because TOPS had knowledge of '278 Patent rights and proceeded to directly and indirectly infringe, TOPS' infringement is willful.  Willful infringement of the '278 Patent entitles Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

136.    TOPS's continued infringement of the '278 Patent has damaged and will continue to damage USWS in the amount to be proven at trial.

137.    Unless and until enjoined by this Court, TOPS will continue to directly and indirectly infringe the '278 Patent.  TOPS's infringing acts are causing and will continue to cause USWS irreparable harm, for which there is no adequate remedy at law.  Under 35 U.S.C. § 283, USWS is entitled to a permanent injunction against further infringement.

## SEVENTH CAUSE OF ACTION

### Infringement of the '308 Patent by TOPS

138.    USWS incorporates herein each of the allegations above.

139.    TOPS's products and/or services that infringe the '308 Patent include, but are not limited to, hydraulic fracturing services with all-electric capabilities, which TOPS apparently refers to as "E-Fleets" on its website.

140.    TOPS directly infringes—literally and/or under the doctrine of equivalents—at least representative Claim 1 of the '308 Patent by making, using, selling, importing, and/or offering for sale TOPS system (including at least the E-Fleet) and components thereof.

141.    Claim 1 of the '308 Patent recites:

> 1.  A system for hydraulically fracturing an underground formation in an oil or gas well to extract oil or gas from the formation, the oil or gas well having a wellbore that permits passage of fluid from the wellbore into the formation, the system comprising:
>
>     a pump fluidly connected to the well; and

an electric motor to power the pump;

the pump configured to pump fluid into the wellbore at high pressure so that the fluid passes from the wellbore into the formation, and fractures the formation, wherein the pump is a triplex or a quinteplex pump rated at about 2250 hydraulic horsepower or more.

142.    The TOPS system (including at least the E-Fleet) is a system for hydraulically fracturing an underground formation in an oil or gas well to extract oil or gas from the formation, the oil or gas well having a wellbore that permits passage of fluid from the wellbore into the formation.

143.    The TOPS system (including at least the E-Fleet) comprises a HH-6000HP Pump, which is a pump fluidly connected to the well.

144.    The TOPS system (including at least the E-Fleet) comprises an electric motor to power the HH-6000HP Pump.

145.    The HH-6000HP Pump in the TOPS system (including at least the E-Fleet) is configured to pump fluid into the wellbore at high pressure so that the fluid passes from the wellbore into the formation, and fractures the formation.

146.    The HH-6000HP Pump in the TOPS system (including at least the E-Fleet) is a quinteplex pump.



147.    The HH-6000HP Pump in the TOPS system (including at least the E-Fleet) is rated above 2250 hydraulic horsepower according to pump specifications from Honghua.[7]

148.    In addition to its direct infringement, TOPS knowingly induces and/or contributes to the infringement of the '308 Patent, including at least Claim 1, by customers and end-users of the TOPS system (including at least the E-Fleet), with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to making, selling, promoting, or offering for sale products and services relating to the TOPS system (including at least the E-Fleet) and components thereof, in the United States.

149.    As alleged above, TOPS had actual notice of the '308 Patent and of its infringement of that patent.  Because TOPS had knowledge of '308 Patent rights and proceeded to directly and indirectly infringe, TOPS' infringement is willful.  Willful infringement of the '308 Patent entitles Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

150.    TOPS's continued infringement of the '308 Patent has damaged and will continue to damage USWS in the amount to be proven at trial.

151.    Unless and until enjoined by this Court, TOPS will continue to directly and indirectly infringe the '308 Patent.  TOPS's infringing acts are causing and will continue to cause USWS irreparable harm, for which there is no adequate remedy at law.  Under 35 U.S.C. § 283, USWS is entitled to a permanent injunction against further infringement.

## EIGHTH CAUSE OF ACTION

### Infringement of the '601 Patent by Honghua

152.    USWS incorporates herein each of the allegations above.

---

[7] Hydraulic horsepower is calculated using HH-6000HP Pump specifications for maximum flow and working pressure.  http://www.hh-gltd.com/product/infos/125.

153.    Honghua's products and/or services that infringe the '601 Patent include, but are not limited to, the "Ultra-high Horsepower Electric Fracturing System." ("HH E-Fracking System").

154.    On information and belief, Honghua imports the HH E-Fracking System, and components thereof, from Sichuan Honghua.  Honghua sells and offers for sale the HH E-Fracking System, and components thereof, to providers of fracking services in the United States, including TOPS.

155.    Honghua directly infringes—literally and/or under the doctrine of equivalents—at least representative Claim 8 of the '601 Patent by making, selling, importing, and/or offering for sale at least the HH E-Fracking System and components thereof.

156.    Claim 8 of the '601 Patent recites:

> 8.    A system for fracturing a rock formation in an oil or gas well by pumping hydraulic fracturing fluid into the well, the system comprising:
>
> a pump for pumping the hydraulic fracturing fluid into the well, and then from the well into the formation, the pump mounted on a trailer or truck and capable of pumping the hydraulic fracturing fluid at high pressure to crack the formation;
>
> an electric motor having a high-strength steel or steel alloy drive shaft attached to the pump and configured to drive the pump;
>
> a variable frequency drive connected to the electric motor to control the speed of the motor, the variable frequency drive frequently performing electric motor diagnostics to prevent damage to the electric motor if it becomes grounded or shorted; and
>
> a generator connected to the electric motor that provides electric power to the electric motor.

157.    The HH E-Fracking System is a system for fracturing a rock formation in an oil or gas well by pumping hydraulic fracturing fluid into the well.



158.    The HH E-Fracking System comprises the HH-6000HP Pump, which is a pump for pumping the hydraulic fracturing fluid into the well, and then from the well into the formation.

159.    The HH-6000HP Pump design allows it to be mounted on a trailer or truck.  The Honghua Sales Presentation displays this capability.

160.    The HH-6000HP Pump is capable of pumping the hydraulic fracturing fluid at high pressure to crack the formation.

161.    The HH-6000HP Pump comprises an electric motor having a high-strength steel or steel alloy drive shaft attached to the pump and configured to drive the pump.  Honghua sells the HH-6000HP Pump as a single platform skid structure that bundles an electric fracturing pump with an electric motor having a high-strength steel or steel alloy drive shaft attached to the pump and configured to drive the pump.

162.    The HH E-Fracking System comprises the HH-VFD, which is a variable frequency drive connected to the electric motor to control the speed of the motor.

163.    The HH-VFD is a variable frequency drive frequently performing electric motor diagnostics to prevent damage to the electric motor if it becomes grounded or shorted.

164.    The HH E-Fracking System comprises a generator connected to the electric motor that provides electric power to the electric motor.



165.    In addition to direct infringement, Honghua knowingly induces infringement of the '601 Patent, including at least Claim 8, with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to making, selling, promoting, or offering for sale products relating to an electric fracturing system, and components thereof, in the United States.

166.    Honghua's inducement of infringement includes, for example, advertising and promoting the HH E-Fracking System in its Sales Presentation, which makes several references to the infringing TOPS system as an exemplary use case.

167.    The Sales Presentation instructs actual and potential customers of Honghua to make and use a system that infringes the '601 Patent.



168.    On information and belief, Honghua's activities have induced actual infringement by Honghua's customers and end-users of the HH E-Fracking System, such as TOPS.

169.    Honghua also contributes to infringement of the '601 Patent, including at least Claim 8 by offering to sell, selling, or importing into the United States one or more components that are a material part of the claimed inventions of the '601 Patent and that have no substantial non-infringing use with knowledge that such components are especially made or adapted for use in infringing the '601 Patent. Such sold, offered for sale, and/or imported components include the HH-6000HP Pump with HH-VFD systems and components thereof.

170.    Products like the HH-6000HP Pump with HH-VFDs are especially made and/or adapted for use in the HH E-Fracking System, a system that infringes the '601 Patent.  For example, the well site diagram for the HH E-Fracking System in the Sales Presentation shows a system that infringes the '601 Patent.  The Sales Presentation also includes multiple use cases photographed at well sites that likewise infringe the '601 Patent.

171.    As alleged above, Honghua had actual notice of the '601 Patent and of its infringement of that patent.  Because Honghua had knowledge of '601 Patent rights and proceeded to directly and indirectly infringe, Honghua' infringement is willful.  Willful infringement of the '601 Patent entitles Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

172.    Honghua's continued infringement of the '601 Patent has damaged and will continue to damage USWS in the amount to be proven at trial.

173.    Unless and until enjoined by this Court, Honghua will continue to directly and indirectly infringe the '601 Patent.  Honghua's infringing acts are causing and will continue to cause USWS irreparable harm, for which there is no adequate remedy at law.  Under 35 U.S.C. § 283, USWS is entitled to a permanent injunction against further infringement.

## NINTH CAUSE OF ACTION

### Infringement of the '410 Patent by Honghua

174.    USWS incorporates herein each of the allegations above.

175.    Honghua's products and/or services that infringe the '410 Patent include, but are not limited to, the HH E-Fracking System.

176.    On information and belief, Honghua imports the HH E-Fracking System, and components thereof, from Sichuan Honghua.  Honghua sells and offers for sale at least the HH E-Fracking System, and components thereof, to providers of fracking services in the United States, including TOPS.

177.    Honghua directly infringes—literally and/or under the doctrine of equivalents—at least representative Claim 1 of the '410 Patent by making, selling, importing, and/or offering for sale the HH E-Fracking System and components thereof.

178.    Claim 1 of the '410 Patent recites:

1.  A system for hydraulically fracturing an underground formation in an oil or gas well to extract oil or gas from the formation, the oil or gas well having a wellbore that permits passage of fluid from the wellbore into the formation, the system comprising:

a plurality of electric pumps fluidly connected to the well and powered by at least one electric motor, and configured to pump fluid into the wellbore at high pressure so that the fluid passes from the wellbore into the formation, and fractures the formation; and

a variable frequency drive connected to the electric motor to control the speed of the motor, wherein the variable frequency drive frequently performs electric motor diagnostics to prevent damage to the at least one electric motor.

179.    The HH E-Fracking System is a system for hydraulically fracturing an underground formation in an oil or gas well to extract oil or gas from the formation, the oil or gas well having a wellbore that permits passage of fluid from the wellbore into the formation.

180.    The HH E-Fracking System comprises a plurality of HH-6000HP Pumps, which are electric pumps fluidly connected to the well.

181.    The HH-6000HP Pumps are powered by at least one electric motor.  Honghua sells the HH-6000HP Pump as a single platform skid structure that bundles an electric fracturing pump with an electric motor.

182.    The HH-6000HP Pumps are configured to pump fluid into the wellbore at high pressure so that the fluid passes from the wellbore into the formation, and fractures the formation.

183.    The HH E-Fracking System comprises the HH-VFD, which is a variable frequency drive connected to the electric motor to control the speed of the motor.

184.    The HH-VFD is a variable frequency drive frequently performing electric motor diagnostics to prevent damage to the electric motor if it becomes grounded or shorted.

185.    In addition to direct infringement, Honghua knowingly induces infringement of the '410 Patent, including at least Claim 1, with specific intent to induce infringement, and/or with

willful blindness to the possibility that its acts induce infringement, through activities relating to making, selling, promoting, or offering for sale products relating to an electric fracturing system, and components thereof, in the United States.

186.    Honghua's inducement of infringement includes, for example, advertising and promoting the HH E-Fracking System in its Sales Presentation, which makes several references to the infringing TOPS system as an exemplary use case.

187.    The Sales Presentation instructs actual and potential customers of Honghua to make and use a system that infringes the '410 Patent.

188.    On information and belief, Honghua's activities have induced actual infringement by Honghua's customers and end-users of the HH E-Fracking System, such as TOPS.

189.    Honghua also contributes to infringement of the '410 Patent, including at least Claim 1 by offering to sell, selling, or importing into the United States one or more components that are a material part of the claimed inventions of the '410 Patent and that have no substantial non-infringing use with knowledge that such components are especially made or adapted for use in infringing the '410 Patent. Such sold, offered for sale, and/or imported components include the HH-6000HP Pump with HH-VFD systems and components thereof.

190.    Products like the HH-6000HP Pump with HH-VFDs are especially made and/or adapted for use in the HH E-Fracking System, a system that infringes the '410 Patent. For example, the well site diagram for the HH E-Fracking System in the Sales Presentation shows a system that infringes the '410 Patent. The Sales Presentation also includes multiple use cases photographed at well sites that likewise infringe the '410 Patent.

191.    As alleged above, Honghua had actual notice of the '410 Patent and of its infringement of that patent. Because Honghua had knowledge of '410 Patent rights and proceeded to directly and indirectly infringe, Honghua' infringement is willful. Willful infringement of the

'410 Patent entitles Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

192.    Honghua's continued infringement of the '410 Patent has damaged and will continue to damage USWS in the amount to be proven at trial.

193.    Unless and until enjoined by this Court, Honghua will continue to directly and indirectly infringe the '410 Patent.  Honghua's infringing acts are causing and will continue to cause USWS irreparable harm, for which there is no adequate remedy at law.  Under 35 U.S.C. § 283, USWS is entitled to a permanent injunction against further infringement.

## TENTH CAUSE OF ACTION

### Infringement of the '728 Patent by Honghua

194.    USWS incorporates herein each of the allegations above.

195.    Honghua's products and/or services that infringe the '728 Patent include, but are not limited to, the HH E-Fracking System.

196.    On information and belief, Honghua imports the HH E-Fracking System, and components thereof, from Sichuan Honghua.  Honghua sells and offers for sale the HH E-Fracking System, and components thereof, to providers of fracking services in the United States, including TOPS.

197.    Honghua directly infringes—literally and/or under the doctrine of equivalents—at least representative Claim 1 of the '728 Patent by making, selling, importing, and/or offering for sale the at least the HH E-Fracking System and components thereof.

198.    Claim 1 of the '728 Patent recites:

> 1.  A system for hydraulically fracturing an underground formation in an oil or gas well, the system comprising:
>
> a plurality of electric pumps fluidly connected to the well and powered by at least one electric motor, and configured to pump fluid into the wellbore at high pressure so that the fluid passes

44

from the wellbore into the formation, and fractures the formation;

a variable frequency drive connected to the electric motor to control the speed of the motor, wherein the variable frequency drive frequently performs electric motor diagnostics to prevent damage to the at least one electric motor; and

a working fluid system comprising working fluid, and a heater that is in thermal contact with the working fluid;

wherein the heater comprises a tank having working fluid and a heating element in thermal contact with the working fluid.

199.    The HH E-Fracking System is a system for hydraulically fracturing an underground formation in an oil or gas well.

200.    The HH E-Fracking System comprises a plurality of HH-6000HP Pumps, which are pumps fluidly connected to the well.

201.    The HH-6000HP Pumps are powered by at least one electric motor.  Honghua sells the HH-6000HP Pump as a single platform skid structure that bundles an electric fracturing pump with an electric motor.

202.    The HH-6000HP Pumps are configured to pump fluid into the wellbore at high pressure so that the fluid passes from the wellbore into the formation, and fractures the formation.

203.    The HH E-Fracking System comprises the HH-VFD, which is a variable frequency drive connected to the electric motor to control the speed of the motor.

204.    The HH-VFD is a variable frequency drive that frequently performs electric motor diagnostics to prevent damage to the at least one electric motor.

205.    The HH E-Fracking System comprises a working fluid system comprising working fluid.

206.    On information and belief, the HH E-Fracking System comprises a heater that is in thermal contact with the working fluid.  Honghua sells equipment to providers of well services

operating in regions with low temperatures during the winter, such as the Niobrara-DJ Basin. Accordingly, on information and belief, the HH E-Fracking System uses a heater in thermal contact with the working fluid to ensure flow for the working fluid.

207.    On information and belief, the heater in the HH E-Fracking System comprises a tank having working fluid and a heating element in thermal contact with the working fluid.

208.    In addition to direct infringement, Honghua knowingly induces infringement of the '728 Patent, including at least Claim 1, with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to making, selling, promoting, or offering for sale products relating to an electric fracturing system, and components thereof, in the United States.

209.    Honghua's inducement of infringement includes, for example, advertising and promoting the HH E-Fracking System in its Sales Presentation, which makes several references to the infringing TOPS system as an exemplary use case.

210.    The Sales Presentation instructs actual and potential customers of Honghua to make and use a system that infringes the '728 Patent.

211.    On information and belief, Honghua's activities have induced actual infringement by Honghua's customers and end-users of the HH E-Fracking System, such as TOPS.

212.    Honghua also contributes to infringement of the '728 Patent, including at least Claim 1 by offering to sell, selling, or importing into the United States one or more components that are a material part of the claimed inventions of the '728 Patent and that have no substantial non-infringing use with knowledge that such components are especially made or adapted for use in infringing the '728 Patent. Such sold, offered for sale, and/or imported components include the HH-6000HP Pump with HH-VFD systems and components thereof.

213.    Products like the HH-6000HP Pump with HH-VFDs are especially made and/or adapted for use in the HH E-Fracking System, a system that infringes the '728 Patent.   For example, the well site diagram for the HH E-Fracking System in the Sales Presentation shows a system that infringes the '728 Patent.   The Sales Presentation also includes multiple use cases photographed at well sites that likewise infringe the '728 Patent.

214.    As alleged above, Honghua had actual notice of the '728 Patent and of its infringement of that patent.   Because Honghua had knowledge of '728 Patent rights and proceeded to directly and indirectly infringe, Honghua' infringement is willful.   Willful infringement of the '728 Patent entitles Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

215.    Honghua's continued infringement of the '728 Patent has damaged and will continue to damage USWS in the amount to be proven at trial.

216.    Unless and until enjoined by this Court, Honghua will continue to directly and indirectly infringe the '728 Patent.   Honghua's infringing acts are causing and will continue to cause USWS irreparable harm, for which there is no adequate remedy at law.   Under 35 U.S.C. § 283, USWS is entitled to a permanent injunction against further infringement.

## ELEVENTH CAUSE OF ACTION

### Infringement of the '871 Patent by Honghua

217.    USWS incorporates herein each of the allegations above.

218.    Honghua's products and/or services that infringe the '871 Patent include, but are not limited to, the HH E-Fracking System.

219.    On information and belief, Honghua imports the HH E-Fracking System, and components thereof, from Sichuan Honghua.   Honghua sells and offers for sale the at least the HH

E-Fracking System, and components thereof, to providers of fracking services in the United States, including TOPS.

220.    Honghua directly infringes—literally and/or under the doctrine of equivalents—at least representative Claim 1 of the '871 Patent by making, selling, importing, and/or offering for sale the HH E-Fracking System and components thereof.

221.    Claim 1 of the '871 Patent recites:

> 1.  A hydraulic fracturing system for fracturing a subterranean formation comprising:
>
> a plurality of electric pumps fluidly connected to the formation, and powered by at least one electric motor, and configured to pump fluid at high pressure into a wellbore that intersects the formation, so that the fluid passes from the wellbore into the formation, and fractures the formation;
>
> a variable frequency drive connected to the electric motor to control the speed of the motor, wherein the variable frequency drive frequently performs electric motor diagnostics to prevent damage to the at least one electric motor; and
>
> a signal assembly that selectively emits a visual signal that is indicative of an operational state of the hydraulic fracturing system.

222.    The HH E-Fracking System is a hydraulic fracturing system for fracturing a subterranean formation.

223.    The HH E-Fracking System comprises a plurality of HH-6000HP Pumps, which are electric pumps fluidly connected to the formation.

224.    The HH-6000HP Pumps are powered by at least one electric motor. Honghua sells the HH-6000HP Pump as a single platform skid structure that bundles an electric fracturing pump with an electric motor.

225.    The HH-6000HP Pumps are configured to pump fluid at high pressure into a wellbore that intersects the formation, so that the fluid passes from the wellbore into the formation, and fractures the formation.

226.    The HH E-Fracking System comprises a HH-VFD, which is a variable frequency drive connected to the electric motor to control the speed of the motor, wherein the variable frequency drive frequently performs electric motor diagnostics to prevent damage to the at least one electric motor.

227.    The HH-6000HP Pumps comprise a signal assembly that selectively emits a visual signal that is indicative of an operational state of the hydraulic fracturing system.

228.    In addition to direct infringement, Honghua knowingly induces infringement of the '871 Patent, including at least Claim 1, with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to making, selling, promoting, or offering for sale products relating to an electric fracturing system, and components thereof, in the United States.

229.    Honghua's inducement of infringement includes, for example, advertising and promoting the HH E-Fracking System in its Sales Presentation, which makes several references to the infringing TOPS system as an exemplary use case.

230.    The Sales Presentation instructs actual and potential customers of Honghua to make and use a system that infringes the '871 Patent.

231.    On information and belief, Honghua's activities have induced actual infringement by Honghua's customers and end-users of the HH E-Fracking System, such as TOPS.

232.    Honghua also contributes to infringement of the '871 Patent, including at least Claim 1 by offering to sell, selling, or importing into the United States one or more components that are a material part of the claimed inventions of the '871 Patent and that have no substantial

non-infringing use with knowledge that such components are especially made or adapted for use in infringing the '871 Patent. Such sold, offered for sale, and/or imported components include the HH-6000HP Pump with HH-VFD systems and components thereof.

233.    Products like the HH-6000HP Pump with HH-VFDs are especially made and/or adapted for use in the HH E-Fracking System, a system that infringes the '871 Patent.  For example, the well site diagram for the HH E-Fracking System in the Sales Presentation shows a system that infringes the '871 Patent.  The Sales Presentation also includes multiple use cases photographed at well sites that likewise infringe the '871 Patent.

234.    As alleged above, Honghua had actual notice of the '871 Patent and of its infringement of that patent.  Because Honghua had knowledge of '871 Patent rights and proceeded to directly and indirectly infringe, Honghua' infringement is willful.  Willful infringement of the '871 Patent entitles Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

235.    Honghua's continued infringement of the '871 Patent has damaged and will continue to damage USWS in the amount to be proven at trial.

236.    Unless and until enjoined by this Court, Honghua will continue to directly and indirectly infringe the '871 Patent.  Honghua's infringing acts are causing and will continue to cause USWS irreparable harm, for which there is no adequate remedy at law.  Under 35 U.S.C. § 283, USWS is entitled to a permanent injunction against further infringement.

## TWELFTH CAUSE OF ACTION

### Infringement of the '879 Patent by Honghua

237.    USWS incorporates herein each of the allegations above.

238.    Honghua's products and/or services that infringe the '879 Patent include, but are not limited to, the HH E-Fracking System.

239.    On information and belief, Honghua imports the HH E-Fracking System, and components thereof, from Sichuan Honghua.  Honghua sells and offers for sale the at least HH E-Fracking System, and components thereof, to providers of fracking services in the United States, including TOPS.

240.    Honghua directly infringes—literally and/or under the doctrine of equivalents—at least representative Claim 1 of the '879 Patent by making, selling, importing, and/or offering for sale the HH E-Fracking System and components thereof.

241.    Claim 1 of the '879 Patent recites:

> 1.  A system for hydraulically fracturing an underground formation in an oil or gas well, the system comprising:
>
> > a pump for pumping hydraulic fracturing fluid into the wellbore at high pressure so that the fluid passes from the wellbore into the formation and fractures the formation, the pump having a pump shaft that turns to activate the pump;
> >
> > an electric motor with a motor shaft to drive the pump, the electric motor including a variable frequency drive and an alternating current console to control the speed of the electric motor to protect against overheating; and
> >
> > a torsional coupling connecting the motor shaft to the pump shaft, the torsional coupling comprising:
> >
> > a motor component fixedly attached to the motor shaft of the electric motor; and
> >
> > a pump component fixedly attached to the pump shaft of the pump;
> >
> > the motor component engaged with the pump component so that when the motor shaft and motor component rotate, the motor component contacts the pump component so that the pump component and the pump shaft rotate, thereby driving the pump.

242.    The HH E-Fracking System is a system for hydraulically fracturing an underground formation in an oil or gas well.

243.    The HH E-Fracking System comprises a HH-6000HP Pump, which is a pump for pumping hydraulic fracturing fluid into the wellbore at high pressure so that the fluid passes from the wellbore into the formation and fractures the formation.

244.    The HH-6000HP Pump is a pump having a pump shaft that turns to activate the pump.

245.    The HH E-Fracking System comprises an electric motor with a motor shaft to drive the pump.  Honghua sells the HH-6000HP Pump as a single platform skid structure that bundles an electric fracturing pump with an electric motor.

246.    The electric motor in the HH E-Fracking System includes a HH-VFD, which is a variable frequency drive, and an alternating current console to control the speed of the electric motor to protect against overheating.

247.    The HH-6000HP Pump in the HH E-Fracking System comprises a torsional coupling connecting the motor shaft to the pump shaft.

248.    The torsional coupling in the HH E-Fracking System comprises a motor component fixedly attached to the motor shaft of the electric motor.

249.    The torsional coupling in the HH E-Fracking System comprises a pump component fixedly attached to the pump shaft of the pump.

250.    The motor component is engaged with the pump component in the HH E-Fracking System, so that when the motor shaft and motor component rotate, the motor component contacts the pump component so that the pump component and the pump shaft rotate, thereby driving the pump.

251.    In addition to direct infringement, Honghua knowingly induces infringement of the '879 Patent, including at least Claim 1, with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to

making, selling, promoting, or offering for sale products relating to an electric fracturing system, and components thereof, in the United States.

252.    Honghua's inducement of infringement includes, for example, advertising and promoting the HH E-Fracking System in its Sales Presentation, which makes several references to the infringing TOPS system as an exemplary use case.

253.    The Sales Presentation instructs actual and potential customers of Honghua to make and use a system that infringes the '879 Patent.

254.    On information and belief, Honghua's activities have induced actual infringement by Honghua's customers and end-users of the HH E-Fracking System, such as TOPS.

255.    Honghua also contributes to infringement of the '879 Patent, including at least Claim 1 by offering to sell, selling, or importing into the United States one or more components that are a material part of the claimed inventions of the '879 Patent and that have no substantial non-infringing use with knowledge that such components are especially made or adapted for use in infringing the '879 Patent. Such sold, offered for sale, and/or imported components include the HH-6000HP Pump with HH-VFD systems and components thereof.

256.    Products like the HH-6000HP Pump with HH-VFDs are especially made and/or adapted for use in the HH E-Fracking System, a system that infringes the '879 Patent.  For example, the well site diagram for the HH E-Fracking System in the Sales Presentation shows a system that infringes the '879 Patent.  The Sales Presentation also includes multiple use cases photographed at well sites that likewise infringe the '879 Patent.

257.    As alleged above, Honghua had actual notice of the '879 Patent and of its infringement of that patent.  Because Honghua had knowledge of '879 Patent rights and proceeded to directly and indirectly infringe, Honghua' infringement is willful.  Willful infringement of the

'879 Patent entitles Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

258.    Honghua's continued infringement of the '879 Patent has damaged and will continue to damage USWS in the amount to be proven at trial.

259.    Unless and until enjoined by this Court, Honghua will continue to directly and indirectly infringe the '879 Patent.  Honghua's infringing acts are causing and will continue to cause USWS irreparable harm, for which there is no adequate remedy at law.  Under 35 U.S.C. § 283, USWS is entitled to a permanent injunction against further infringement.

### THIRTEENTH CAUSE OF ACTION

#### Infringement of the '278 Patent by Honghua

260.    USWS incorporates herein each of the allegations above.

261.    Honghua's products and/or services that infringe the '278 Patent include, but are not limited to, the HH E-Fracking System.

262.    On information and belief, Honghua imports the HH E-Fracking System, and components thereof, from Sichuan Honghua.  Honghua sells and offers for sale the at least the HH E-Fracking System, and components thereof, to providers of fracking services in the United States, including TOPS.

263.    Honghua directly infringes—literally and/or under the doctrine of equivalents—at least representative Claim 1 of the '278 Patent by making, selling, importing, and/or offering for sale the HH E-Fracking System and components thereof.

264.    Claim 1 of the '278 Patent recites:

> 1.  A system for hydraulically fracturing an underground formation in an oil or gas well to extract oil or gas from the formation, the oil or gas well having a wellbore that permits passage of fluid from the wellbore into the formation, the system comprising:

a plurality of electric pumps fluidly connected to the well, and configured to pump fluid into the wellbore at high pressure so that the fluid passes from the wellbore into the formation, and fractures the formation;

a plurality of generators electrically connected to the plurality of electric pumps to provide electrical power to the electric pumps; and

a centralized control unit coupled to the plurality of electric pumps and the plurality of generators, wherein the centralized control unit is configured to:

monitor at least one of pressure and temperature of the plurality of electric pumps and the plurality of generators.

265.    The HH E-Fracking System is a system for hydraulically fracturing an underground formation in an oil or gas well to extract oil or gas from the formation, the oil or gas well having a wellbore that permits passage of fluid from the wellbore into the formation.

266.    The HH E-Fracking System comprises a plurality of HH-6000HP Pumps, which are electric pumps fluidly connected to the well.

267.    The HH-6000HP Pumps are configured to pump fluid into the wellbore at high pressure so that the fluid passes from the wellbore into the formation, and fractures the formation.

268.    The HH E-Fracking System comprises a plurality of generators electrically connected to the plurality of electric pumps to provide electrical power to the electric pumps.

269.    The HH E-Fracking System comprises a centralized control unit coupled to the plurality of electric pumps and the plurality of generators.

270.    The centralized control unit in the HH E-Fracking System is configured to monitor at least one of pressure and temperature of the plurality of electric pumps and the plurality of generators.

271.    In addition to direct infringement, Honghua knowingly induces infringement of the '278 Patent, including at least Claim 1, with specific intent to induce infringement, and/or with

willful blindness to the possibility that its acts induce infringement, through activities relating to making, selling, promoting, or offering for sale products relating to an electric fracturing system, and components thereof, in the United States.

272.    Honghua's inducement of infringement includes, for example, advertising and promoting the HH E-Fracking System in its Sales Presentation, which makes several references to the infringing TOPS system as an exemplary use case.

273.    The Sales Presentation instructs actual and potential customers of Honghua to make and use a system that infringes the '278 Patent.

274.    On information and belief, Honghua's activities have induced actual infringement by Honghua's customers and end-users of the HH E-Fracking System, such as TOPS.

275.    Honghua also contributes to infringement of the '278 Patent, including at least Claim 1 by offering to sell, selling, or importing into the United States one or more components that are a material part of the claimed inventions of the '278 Patent and that have no substantial non-infringing use with knowledge that such components are especially made or adapted for use in infringing the '278 Patent. Such sold, offered for sale, and/or imported components include the HH-6000HP Pump with HH-VFD systems and components thereof.

276.    Products like the HH-6000HP Pump with HH-VFDs are especially made and/or adapted for use in the HH E-Fracking System, a system that infringes the '278 Patent. For example, the well site diagram for the HH E-Fracking System in the Sales Presentation shows a system that infringes the '278 Patent. The Sales Presentation also includes multiple use cases photographed at well sites that likewise infringe the '278 Patent.

277.    As alleged above, Honghua had actual notice of the '278 Patent and of its infringement of that patent. Because Honghua had knowledge of '278 Patent rights and proceeded to directly and indirectly infringe, Honghua' infringement is willful. Willful infringement of the

'278 Patent entitles Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

278.    Honghua's continued infringement of the '278 Patent has damaged and will continue to damage USWS in the amount to be proven at trial.

279.    Unless and until enjoined by this Court, Honghua will continue to directly and indirectly infringe the '278 Patent.  Honghua's infringing acts are causing and will continue to cause USWS irreparable harm, for which there is no adequate remedy at law.  Under 35 U.S.C. § 283, USWS is entitled to a permanent injunction against further infringement.

## FOURTEENTH CAUSE OF ACTION

### Infringement of the '308 Patent by Honghua

280.    USWS incorporates herein each of the allegations above.

281.    Honghua's products and/or services that infringe the '308 Patent include, but are not limited to, the HH E-Fracking System.

282.    On information and belief, Honghua imports the HH E-Fracking System, and components thereof, from Sichuan Honghua.  Honghua sells and offers for sale at least the HH E-Fracking System, and components thereof, to providers of fracking services in the United States, including TOPS.

283.    Honghua directly infringes—literally and/or under the doctrine of equivalents—at least representative Claim 1 of the '308 Patent by making, selling, importing, and/or offering for sale the HH E-Fracking System and components thereof.

284.    Claim 1 of the '308 Patent recites:

    1.  A system for hydraulically fracturing an underground formation in an oil or gas well to extract oil or gas from the formation, the oil or gas well having a wellbore that permits passage of fluid from the wellbore into the formation, the system comprising:

        a pump fluidly connected to the well; and

an electric motor to power the pump;

the pump configured to pump fluid into the wellbore at high pressure so that the fluid passes from the wellbore into the formation, and fractures the formation, wherein the pump is a triplex or a quinteplex pump rated at about 2250 hydraulic horsepower or more.

285.    The HH E-Fracking System is a system for hydraulically fracturing an underground formation in an oil or gas well to extract oil or gas from the formation, the oil or gas well having a wellbore that permits passage of fluid from the wellbore into the formation.

286.    The HH E-Fracking System comprises a HH-6000HP Pump, which is a pump fluidly connected to the well.

287.    The HH E-Fracking System comprises an electric motor to power the pump. Honghua sells the HH-6000HP Pump as a single platform skid structure that bundles an electric fracturing pump with an electric motor to power the pump.

288.    The HH-6000HP Pump is configured to pump fluid into the wellbore at high pressure so that the fluid passes from the wellbore into the formation, and fractures the formation.

289.    The HH-6000HP Pump is a quinteplex pump.

290.    The HH-6000HP Pump is rated above 2250 hydraulic horsepower according to pump specifications from Honghua.

291.    In addition to direct infringement, Honghua knowingly induces infringement of the '308 Patent, including at least Claim 1, with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to making, selling, promoting, or offering for sale products relating to an electric fracturing system, and components thereof, in the United States.

292.    Honghua's inducement of infringement includes, for example, advertising and promoting the HH E-Fracking System in its Sales Presentation, which makes several references to the infringing TOPS system as an exemplary use case.

293.    The Sales Presentation instructs actual and potential customers of Honghua to make and use a system that infringes the '308 Patent.

294.    On information and belief, Honghua's activities have induced actual infringement by Honghua's customers and end-users of the HH E-Fracking System, such as TOPS.

295.    Honghua also contributes to infringement of the '308 Patent, including at least Claim 1 by offering to sell, selling, or importing into the United States one or more components that are a material part of the claimed inventions of the '308 Patent and that have no substantial non-infringing use with knowledge that such components are especially made or adapted for use in infringing the '308 Patent. Such sold, offered for sale, and/or imported components include the HH-6000HP Pump with HH-VFD systems and components thereof.

296.    Products like the HH-6000HP Pump with HH-VFDs are especially made and/or adapted for use in the HH E-Fracking System, a system that infringes the '308 Patent.  For example, the well site diagram for the HH E-Fracking System in the Sales Presentation shows a system that infringes the '308 Patent.  The Sales Presentation also includes multiple use cases photographed at well sites that likewise infringe the '308 Patent.

297.    As alleged above, Honghua had actual notice of the '308 Patent and of its infringement of that patent.  Because Honghua had knowledge of '308 Patent rights and proceeded to directly and indirectly infringe, Honghua' infringement is willful.  Willful infringement of the '308 Patent entitles Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

298.    Honghua's continued infringement of the '308 Patent has damaged and will continue to damage USWS in the amount to be proven at trial.

299.    Unless and until enjoined by this Court, Honghua will continue to directly and indirectly infringe the '308 Patent.  Honghua's infringing acts are causing and will continue to cause USWS irreparable harm, for which there is no adequate remedy at law.  Under 35 U.S.C. § 283, USWS is entitled to a permanent injunction against further infringement.

## JURY DEMAND

300.    USWS respectfully requests a jury trial on any issues so triable.

## PRAYER FOR RELIEF

301.    WHEREFORE, USWS respectfully requests that the Court enter in its favor and grant the following relief:

a.    A judgment that Defendants have infringed and are infringing the '601, '410, '728, '871, '879, '278, and '308 Patents literally and/or under the doctrine of equivalents;

b.    A judgment that Defendants' infringement of the '601, '410, '728, '871, '879, '278, and '308 Patents was and continues to be willful;

c.    A judgment and order requiring Defendants to pay USWS damages pursuant to 35 U.S.C. § 284 arising out of Defendants' infringement of the '601, '410, '728, '871, '879, '278, and '308 Patents, including enhanced damages;

d.    An injunction enjoining Defendants, and all others in active concert with Defendants, from infringement of the '601, '410, '728, '871, '879, '278, and '308 Patents;

e.    An order finding that this is an exceptional case and awarding USWS its reasonable attorneys' fees under 35 U.S.C. § 285.

f.    A judgment requiring Defendants to pay prejudgment and post-judgment interest to the fullest extent allowed under the law;

g.   An order awarding USWS its costs and fees;

h.   Such other relief as the Court may deem appropriate and just under the circumstances.

Dated: July 3, 2019                                    Respectfully submitted,

                                                       /s/ *Todd W. Mensing*
                                                       Todd Mensing
                                                       Texas Bar No. 24013156
                                                       Federal Bar No. 302944
                                                       tmensing@azalaw.com
                                                       Amir H. Alavi
                                                       Texas Bar No. 00793239
                                                       Federal Bar No. 20910
                                                       alavi@azalaw.com
                                                       Masood Anjom
                                                       Texas Bar No. 24055107
                                                       manjom@azalaw.com
                                                       Weining Bai
                                                       Texas Bar No. 24101477
                                                       Federal Bar No. 2996450
                                                       wbai@azalaw.com
                                                       **AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI**
                                                       **& MENSING P.C.**
                                                       1221 McKinney Street, Suite 2500
                                                       Houston, TX 77010
                                                       Telephone: 713-655-1101
                                                       Facsimile: 713-655-0062

                                                       **ATTORNEYS FOR PLAINTIFF U.S.**
                                                       **WELL SERVICES, INC.**